AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

FILED 22 NOV '17 09:40 USDC-ORP

United States of America )
v. )
) Case No. **'17 -MJ-189**
Joseph Richard CARUSO )
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   November 21, 2017   in the county of   Multnomah   in the
_____ District of   Oregon  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, 952(a), and 18 U.S.C. § 545. | Attempted Possession with the Intent to Distribute a Controlled Substance (Cyclopropylfentanyl) and Unlawful Importation of a Controlled Substance (Cyclopropylfentanyl) with intent to Distribute |

This criminal complaint is based on these facts:

See affidavit of HSI Special Agent Guy Gino, which is attached and incorporated fully by reference.

☑ Continued on the attached sheet.

*Sworn via telephone @ 5:25pm on 11/21/2017 (FRCP 4.1) SFB*

*Complainant's signature*

Guy Gino, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   11/21/2017

*Judge's signature*

City and state:   Portland, Oregon     Hon. Stacie F. Beckerman, U.S. Magistrate Judge
*Printed name and title*

## Affidavit in Support of Criminal Complaint
## and Application for an Arrest Warrant

I, Guy Gino, being first duly sworn, depose and say:

### Introduction and Agent Background

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations. I am currently detailed to the High Intensity Drug

1

Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's Drugs and Vice Division in Portland, Oregon.

2.  This affidavit is offered in support of a criminal complaint and arrest warrant for Joseph Richard CARUSO. Based upon the forgoing facts, I have probable cause to believe that On November 21, 2017, CARUSO knowingly imported and attempted to possess with intent to distribute a substance containing a detectable amount of Cyclopropylfentanyl, in violations of 21 U.S.C. §§ 841(a)(1), 846, 952(a), and 18 U.S.C. § 545.

3.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

### Applicable Law

4.  The Controlled Substances Act (CSA) is the statue prescribing federal U.S. drug policy under which the manufacture, importation, possession, use and distribution of certain substances is regulated. The CSA classified drugs into five schedules. Schedule I drugs, substances or chemicals are defined as drugs with no currently accepted medical use and a high potential for abuse. Schedule I drugs are the most dangerous drugs of all the drug schedules with potentially severe psychological or physical dependence. Cyclopropylfentanyl, is a Schedule I controlled substance as defined by 21 U.S.C. § 802.

5. Pursuant to 21 U.S.C. § 952(a), it is unlawful to import into the customs territory of the United States, from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter, or ephedrine, pseudoephedrine, or phenylpropanolamine.

6. Pursuant to 18 U.S.C. § 545, it is unlawful for any person to knowingly and willfully, with intent to defraud the United States, smuggle, or clandestinely introduce or attempt to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

7. Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 846 makes it unlawful for anyone to attempt to or conspire to violate 21 U.S.C. § 841(a)(1).

## Statement of Probable Cause

8. On November 19, 2017, US Postal Inspection Service (USPIS) Inspector Adam Sale located an international parcel at the USPS PACC facility in Portland, Oregon. The parcel,

identified as USPS Air Mail parcel # LS142967367CN, (hereinafter **Subject Parcel**) was imported from the China with a destination of :

    Joe Caruso
    100 Kerr Parkway #10, Lake Oswego
    Oregon 97035 USA

The shipping company of this parcel was listed on the international waybill as:

    zhouxiang
    Room 1217, No. 145 B Lanxi Road
    PuTuoQu
    PuTuoQu SHANGHAI 200062

    9.    USPIS Inspector Sale noted that the parcel had been manifested as a "Knitting Needle" and packaged inside a small yellow padded envelope. Upon picking up the envelope, the contents felt to be that of a powder and was not consistent with what a solid item like a knitting needle would feel like. Inspector Sale contacted me and told me that he located the subject parcel at the USPS PACC Facility, 7425 NE Air Trans Way, Portland, Oregon. After Inspector Sale explained to me his initial observations, I agreed that they were indeed suspicious and met with Inspector Sale to further inspect the International parcel.

    10.    I arrived at the USPS PACC and after my initial inspection decided to conduct an extended border search on the Subject Parcel. I opened the yellow envelope and found that it contained a Mylar heat-sealed package. This was not consistent with a "Knitting Needle".

    11.    Due to the potential dangerous nature of Subject Parcel, I took possession of the suspect parcel and its contents and transported them to the Portland Police Bureau's (PPB) Drugs and Vice Division. I did this so I can observe the suspect parcel's contents in an ideal environment that would ensure my safety.

4

12. At the PPB DVD office and using a ventilated hood, I opened the heat-sealed Mylar bag and discovered it contained another heat-sealed Mylar bag. Upon opening the second Mylar bag, I observed a clear Ziploc type baggie containing fine off white powdery substance. I weighed the Ziploc type baggie containing fine off white powdery substance and observed it weighed 27.1 grams.

13. I processed the Subject Parcel and its contents and turned them over to the PPB Property Evidence Division for safekeeping.

14. On November 20, 2017, Portland Police Officer Scott Groshong transported the Ziploc type baggie containing fine off white powdery substance to the Oregon State Police Laboratory where it was analyzed. OSP Chemist Gary Gephardt identified that the Ziploc type baggie containing fine off white powdery substance was Cyclopropylfentanyl. Cyclopropylfentanyl is a derivative of fentanyl and is a Schedule I controlled substance.

15. I know based off my training and experience that Cyclopropylfentanyl is a very powerful opioid that is ingested in microgram dosages and has been the cause of several recent overdose deaths in the Portland, Oregon metropolitan area.

16. On November 20, 2017, HSI Portland, Oregon agreed to conduct a controlled delivery of Subject Parcel, to the addressed recipient noted on the shipping label "Joe Caruso 100 Kerr Parkway #10, Lake Oswego, Oregon 97035 USA". Because the Cyclopropylfentanyl contained in the Subject Parcel is in powder form, and very dangerous, AUSA Scott Kerin authorized the delivery of the Subject Parcel be conducted without the Cyclopropylfentanyl rather it be replaced with an inert powder and vacuum sealed inside the original envelope. This was done so that when the controlled delivery of the Subject Parcel takes place, there was little

risk of the Cyclopropylfentanyl endangering human health, and to prevent the recipient(s) from destroying all the Cyclopropylfentanyl originally contained in the Subject Parcel.

17. IRS Biundo conducted DHS database queries and found that Joseph Richard CARUSO Jr is a convicted felon assigned FBI # 989803XD7. CARUSO was arrested for possession of Heroin on March 21, 2014. Caruso was convicted for that felony charge on August 22, 2014.

18. IRS Biundo conducted Oregon DMV database queries, which revealed that CARUSO listed 100 Kerr Parkway #10, Lake Oswego, Oregon 97035 as his when he updated his driver's license information on March 7, 2017.

19. Further HSI database queries identified that HSI Beijing reported that CARUSO's telephone number (503) 277-9884 was identified in a Chinese Ministry Public Security investigation where the Chinese dismantled a DTO sending out fentanyl to the United States. The CMPS sent out 17 leads from their takedown of the organization and identified that CARUSO's number was associated to a package containing 50g Fentanyl addressed to another individual in the Portland, Oregon on November 1, 2016. Toll records show that CARUSO last called that individual on October 19, 2017.

20. On November 20, 2017, HSI Agents and Task Force Officers conducted surveillance at 100 Kerr Parkway #10, Lake Oswego, Oregon 97035. During this surveillance, CARUSO was observed departing from the Subject Premises and driving the Subject Vehicle.

21. On November 21, 2017, 2017, IRS Biundo conducted DHS database queries on all imports destined for 100 Kerr Parkway #10, Lake Oswego, OR 97035. As a result of these queries, IRS Biundo identified that between October 18, 2016 and November 10, 2017 there have been six imports addressed to Joe Caruso at this address including the one that is being

delivered in the controlled delivery originating from China.

22. Investigators conducted a review of these imports and learned that their descriptions were transmitted to US Customs and Border Protection (CBP) by the shipper. These imports were manifested as "KNITTING NEEDLE"; "SAMPLES OF COSMETICS"; "SC00068487ZX"; "DOLL"; "TOY"; "SAMPLES OF COSMETICS"; SC00042502ZX"; "DOLL"; AND "PRESENT". One of these shippers has had previous parcels seized by CBP.

23. On October 18, 2016, one parcel was shipped by EXPRESS, Room 991 Dixi East Building CN 518100 and destined to "Joe Caruso" at 100 Kerr parkway #10, Lake Osw, US 97035". The package was manifested as "PRESENT" with a weight of .2520kg. Your affiant is aware that the shipping agent "EXPRESS" has had parcels seized by CBP and/or USPS that have contained Furanyl Fentanyl.

24. I was informed on November 11, 2017 that USPS Inspectors along with HSI Detroit BEST Special Agents seized two parcels on August 16, 2016. These parcels were shipped from XHexpress Room 991, Dixi East Building Futian District Shenzhen, China and addressed to a recipient in Allen Park, Michigan. Each parcel here was manifested as "Present" and upon inspection, it was observed that each package actually contained a fine, white, powdery substance that was suspected to be Fentanyl. Forensic Science Laboratory in Oakland County Sheriff's office later confirmed that the substance tested positive for Furanyl Fentanyl (HC1), and analogue of Fentanyl.

25. On November 21, 2017, a controlled delivery of the Subject Parcel to the Subject Premises was executed by having a USPS employee deliver the Subject Parcel that contained the inert powder to the Postal Box assigned to 100 Kerr Parkway #10, Lake Oswego, Oregon 97035.

26. Shortly thereafter, CARUSO was observed by investigators using his key to open the Postal Box associated to 100 Kerr Parkway #10, Lake Oswego, Oregon 97035 and remove the Subject Parcel.

27. HSI agents and Task Force Officers confronted CARUSO with the Subject Parcel in his possession and placed him under arrest.

28. I therefore believe that there is probable cause that Joseph Richard CARUSO knowingly and intentionally conspired to possess and distribute a substance containing CARUSO knowingly possessed with intent to distribute a substance containing detectable amounts of Cyclopropylfentanyl in violations of 21 U.S.C. §§ 841(a)(1), 952(a), and 18 U.S.C. § 545.

29. Based on the foregoing information, your affiant respectfully requests that a warrant of arrest be issued for Joseph Richard CARUSO for violations of 21 U.S.C. §§ 841(a)(1), 846, 952(a), and 18 U.S.C. § 545.

30. This affidavit and the requested criminal complaint and arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin prior to being presented to the Court. AUSA Kerin informed me that in his opinion, the affidavit sets forth sufficient probable cause to support the issuance of the criminal complaint and arrest warrant.

31. I respectfully request the Court to authorize the attached arrest warrant and criminal complaint.

### Request for Sealing

32. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint, including the application, this affidavit, the attachments, and the requested search warrant.

I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

*Sworn via telephone @ 5:25pm on 11/21/2017 (FRCr 4.1)*

Guy Gino, Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 21st day of November 2017.

Honorable Stacie F. Beckerman
United States Magistrate Judge

9